**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

McKenzie County, North Dakota,       )
municipal entity,                     )     **ORDER DENYING DEFENDANT'S**
                                   )     **MOTION TO DISMISS**
             Plaintiff,      )
                                   )
     vs.                     )     Case No. 1:23-cv-094
                                   )
United States of America,         )
                                 )
             Defendant.     )

---

Before the Court is the Defendant's motion to dismiss filed on September 20, 2023.  <u>See</u> Doc. No. 13.  The Plaintiff filed a response in opposition to the motion on November 8, 2023.  <u>See</u> Doc. No. 19.  The Defendant filed a reply brief on December 15, 2023.  <u>See</u> Doc. No. 24.  For the reasons below, the motion is denied


I.    <u>**BACKGROUND**</u>

This is an action to quiet title under 28 U.S.C. § 2409a.  McKenzie County ("County") seeks to quiet title to two roads located in McKenzie County, North Dakota.  The roads in question are referred to as Spring Creek Road/County Road 130 and 106th Avenue/County Road 12.  The United States owns the land underlying the roads.  106th Avenue was established by McKenzie County as a road by petition and order pursuant to state law in 1908 while the Spring Creek Road was similarly established in 1917.  The United States acquired the various parcels of land underlying the roads between 1936 and 1951.  The roads are located in the Little Missouri National Grasslands ("LMNG") which are managed by the United States Forest Service ("Forest Service").  McKenzie

Case 1:23-cv-00094-DLH-CRH   Document 25   Filed 03/25/24   Page 2 of 8

County claims jurisdiction over the roads but the Forest Service refuses to recognize McKenzie County's jurisdictional claims.

This dispute arose in 2021 and 2022 when McKenzie County sought make improvements to and/or maintain the roads. Specifically, McKenzie County seeks to replace a bridge located on 106th Avenue but the Forest Service maintains the County must first obtain an easement from the Forest Service before beginning work. As for the Spring Creek Road, the Forest Service is requiring an oil company to reclaim the road after it issued the oil company a special use permit to improve the road for oil field work. The County seeks to maintain the road as is with the improved surface. The County wrote two letters to the Forest Service seeking recognition of its jurisdiction over the roads. See Doc. Nos. 15-1 and 15-2. On December 16, 2022, the United States Department of Agriculture, Office of General Counsel responded to the letters on behalf of the Forest Service stating that it "strongly disagrees with these specific jurisdictional claims" and advising the County that "[o]nly a federal court of competent jurisdiction has authority to make such finding." See Doc. No. 15-3.

The County filed this quiet title action on May 15, 2023. The United States has yet to file an answer. Now before the Court is the United State's Rule 12(b)(1) motion to dismiss for lack of jurisdiction contending the Court lacks jurisdiction because there is no actual dispute as to title.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. "Subject matter jurisdiction defines the court's authority to hear a given type of case." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009). Jurisdictional issues are a matter for the Court to resolve prior to trial. Osborn v. United States, 918 F.2d 724, 729 (8th Cir.

1990).  The burden is on the plaintiff to show by a preponderance of the evidence that the court has jurisdiction.  Id. at 730; Moss v. United States, 895 F.3d 1091, 1097 (8th Cir. 2018).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack'" on jurisdiction.  Osborn, 918 F.2d at 729 n.6.  In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  Id. (internal citations omitted).  "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards."  Id. (internal citation omitted).  If a defendant wishes to make a factual attack on "the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute.  Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

Where, as here, the defendant factually attacks jurisdiction, the Court "may look outside the pleadings to affidavits or other documents," without converting "the 12(b)(1) motion to one for summary judgment."  Moss, 895 F.3d at 1097; Osborn, 918 F.2d at 729–30.  A district court has "broader power to decide" whether it has jurisdiction under Rule 12(b)(1) than under Rule 56.  Osborn, 918 F.2d at 729–30.  Courts may weigh witness credibility and resolve disputed factual issues when deciding a Rule 12(b)(1) motion to dismiss.  Id.  "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  Osborn, 918 F.2d at 730.  After the evidence is submitted to the Court, it "must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue."  Id.

III.   **LEGAL DISCUSSION**

The United States has moved to dismiss this quiet title action contending there is no "disputed title" because the only dispute is over the scope of the parties' competing authority to regulate the roads in question and the County's claim of jurisdiction over the roads does not amount to a dispute over title.  The County maintains there is a genuine title dispute that can only be resolved by a quiet title action in federal court because the County's jurisdiction over the roads derives from its easements and the United States will not recognize the easements.

The roads in question were the subject of two letters sent by the County to the Forest Service asking the Forest Service to recognize the County's jurisdiction over the roads.  See Doc Nos. 15-1 and 15-2.  The first letter, dated November 4, 2021, relates to Spring Creek Road.  See Doc. No. 15-1.  The first letter came about over concerns that the Forest Service would require an oil company to reclaim the Spring Creek Road back to a two track road against the wishes of the County.  The second letter, dated September 9, 2022, relates to 106th Avenue.  See Doc. No. 15-2.  The second letter came about in response to the Forest Service telling the County that it was required to get an easement from the Forest Service in order to replace the 106th Avenue bridge.  On December 16, 2022, the United States Department of Agriculture, Office of General Counsel ("OGC"), acting on behalf of the Forest Service, responded to the letters.  See Doc. No. 15-3.  The OGC on behalf of the Forest Service  informed the County that it "strongly disagrees with these specific jurisdictional claims" and again advised that it would require the Spring Creek Road to be reclaimed and the County would need an easement to replace the bridge on 106th Avenue.  Id.  After receiving this letter from the OGC, the County filed this federal action to quiet title.

The United States is immune from suit absent a waiver of sovereign immunity.  Hart v. United States, 630 F.3d 1085, 1088 (8th Cir. 2011).  The Quiet Title Act ("QTA") provides a limited

waiver of sovereign immunity:

> The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights.

28 U.S.C. § 2409a(a).  The QTA is the exclusive means by which an adverse claimant can challenge the United States' title to real property.  Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 286 (1983).  For a court to exercise jurisdiction under the QTA, two conditions must exist: (1) the United States must claim an interest in the property at issue and (2) there must be a disputed title to real property.  28 U.S.C. § 2409a(a); Leisnoi, Inc. v. United States, 267 F.3d 1019, 1023 (9th Cir. 2001).

The proper plaintiff to a QTA challenge against the United States in relation to a disputed easement for a public road is "the governmental entity that owns the easement."  Long v. Area Manager, Bureau of Reclamation, 236 F.3d 910, 915 (8th Cir. 2001) (citing Kinscherff, 586 F.2d 159, 160 (10th Cir.1978)).  "[T]he case law and legislative history clearly support the proposition that a claim for a right-of-way, easement, implied easement of necessity or other estate less than a fee simple may properly be the subject of quiet title action against the United States."  Burdess v. United States, 553 F. Supp. 646, 648 (E.D. Ark. 1982) (internal quotations omitted).  The legislative history of the QTA indicates that Congress intended easements to be included among the real property rights that may be adjudicated in a quiet title action.  Kinscherff, 586 F.2d at 161.  "The House Report states: 'The quieting of title where the plaintiff claims an estate less than a fee simple an easement or the title to minerals is likewise included in the terms of the proposed statute.'"  Id. (quoting H.R. Rep. No. 92-1559, 92d Cong., 2d Sess. reprinted in (1972) U.S. Code Cong. & Admin. News 4552).

The collection of individual rights which, in combination, constitute property, are often

described as a "bundle of sticks." United States v. Craft, 535 U.S. 274, 278 (2002). An easement is an interest in land and one of the sticks in the bundle. N. States Power Co. by Bd. of Directors v. Mikkelson, 940 N.W.2d 308, 314 (N.D. 2020) (Tufte, J., dissenting). In North Dakota, when a road is created the public obtains an easement only and the land burdened by the easement remains in possession of the owner of the land in fee, subject to the public use of the easement for travel and other incidental uses. Small v. Burleigh County., 225 N.W.2d 295, 297 (N.D. 1974); N. Pac. Ry. Co. v. Lake, 88 N.W. 461, 463 (N.D. 1901). "Easements are real property interests subject to quiet title actions." Kinscherff v. United States, 586 F.2d 159, 161 (10th Cir. 1978).

In this case, it is undisputed the United States claims an interest in the property at issue. However, the United States contends there is no "disputed title" to real property. "To satisfy the 'disputed title' element of the QTA, a plaintiff must show that the United States has either expressly disputed title or taken action that implicitly disputes it." Kane County, Utah v. United States, 772 F.3d 1205, 1212 (10th Cir. 2014), abrogated on other grounds by Wilkins v. United States, 598 U.S. 152 (2023).

The United States refuses to recognize the roads in question as County roads over which the County, by virtue of its easements established by petition and order under North Dakota law, has jurisdiction to conduct maintenance and make improvements without first having to seek permission from the Forest Service. The County contends it has easements for the establishment of the roads in question which predate the reacquisition of the land by the United States and the United States has taken certain actions which interfere with those easements. The Forest Service refuses to recognize the County's easements and maintains the County must seek its permission to make improvements and conduct maintenance. See Doc. No. 15-3. Still, the United States maintains there is no "disputed title."

6

It is clear the County claims an easement (which it sometimes refers to as jurisdiction) over the roads in question because that is what is created when a road is established by petition and order under North Dakota law.  See Lake, 88 N.W. at 463.  The County could not have jurisdiction over the roads if it did not have an easement.  The United States' attempt to draw a distinction between the County's claim of jurisdiction in the letters sent  to the Forest Service and a dispute as to title is nothing more than a matter of semantics which the Court finds unpersuasive.

The Forest Service disputes the existence of McKenzie County's easement.  See Doc. No. 15-3 ("This letter is to inform you and your client that the Forest Service strongly disagrees with these specific jurisdictional claims and any such similar claims.").  The Forest Service went on to explain that it intended to reclaim the Spring Creek Road over the County's objection and that if the County wanted to a replace the bridge on 106th Avenue Northwest it would need to obtain an easement from the Forest Service first.  Id. The Forest Service also advised the County that "[o]nly a federal court of competent jurisdiction has authority to make such a finding" recognizing the County's claim to jurisdiction over the roads.  Id.  The County claims, with considerable evidence, that it has an easement in lands owned by the United States for the roads in question.  See Doc. Nos. 1, 15-1, and 15-2.  An easement for a road is an interest in land which may be the proper subject of a quiet title action against the United States when brought by the governmental entity that owns the easement.  Long, 236 F.3d at 915; Burdess, 553 F. Supp. at 648.  McKenzie County is that governmental entity in this dispute.

The Court has carefully reviewed the complaint and the letters exchanged between the County and the United States Department of Agriculture, Office of General Counsel and concludes there is definitely a "title dispute" between the parties.  The Court finds the actions taken by the Forest Service requiring easements for bridgework, and requiring the reclaiming of the Spring Creek

7

Road along with the December 16, 2022, letter from the OGC expressly disclaiming the County's claimed road easements, create more than mere ambiguity and are actually at odds with the easements claimed by the County such that an actionable "title dispute" exists.  See Kane County, 772 F.3fd at 1212 (noting disputed title exists when the United States expressly disputes title or takes actions that implicitly dispute it).  The United States does not recognize any of the County's jurisdictional claims and has informed the County that only a federal court can resolve the dispute. See Doc. No. 15-3.  To dismiss this action would leave the County without a remedy.  Were the County to sit on its rights for more than 12 years the Court has no doubt the United States would point to the December 16, 2022, letter in support of an argument that the 12-year statute of limitations has run.  The Court  has jurisdiction over this dispute.


IV.   **CONCLUSION**

Accordingly, and for the reasons set forth above, the Defendant's motion to dismiss (Doc. No. 13) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 25th day of March, 2024.

_/s/  Daniel L. Hovland_____
Daniel L. Hovland, District Judge
United States District Court